ST. LOUIS, I. M. & S. RY. CO. v. SMITH et al.

(Court of Civil Appeals of Texas. Feb. 16, 1911. Rehearing Denied March 16, 1911.)

1. CARRIERS (§ 230*)—SHIPPING CONTRACT—NOTICE OF CLAIM OF DAMAGES—FAIRNESS AND CONSIDERATION—EVIDENCE.

Evidence in an action for injury to cattle through delay in transportation *held* insufficient to raise an issue as to the contract, requiring notice of claim of injury to the cattle to be given before their removal from the place of destination, not having been entered into fairly, or not having had a consideration of a reduced freight rate.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 230.*]

2. CARRIERS (§ 213*)—LIVE STOCK SHIPMENT—NEGLIGENT DELAY—COMPLIANCE WITH FEDERAL STATUTES.

Where the necessary time for the trip is over 28 hours, a carrier is not chargeable with negligence because of delay in transportation of cattle due to its compliance with Rev. St. U. S. §§ 4386–4388 (U. S. Comp. St. 1901, pp. 2995, 2996), prohibiting a carrier confining cattle in cars for more than 28 hours without unloading them for the purpose of feeding and watering them, and permitting them to rest for at least five hours.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 920–922; Dec. Dig. § 213.*]

3. CARRIERS (§ 230*)—LIVE STOCK SHIPMENT—NEGLIGENT DELAY—THROUGH TRAINS.

Where a contract for shipment of cattle was silent as to whether the transportation should be by a through freight train, whether under the circumstances the transportation should have been by such a train is a question for consideration of the jury as entering into a determination of the ultimate question of negligent delay in transportation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

4. EVIDENCE (§ 491*)—OPINION EVIDENCE—REASONABLE TIME.

In the absence of extraordinary circumstances attending a shipment, a witness may not give his opinion, in an action for injury to cattle on the ground of negligent delay in transportation, as to what would be a reasonable time in which to transport them.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2269; Dec. Dig. § 491.*]

Appeal from Franklin County Court; G. E. Cowan, Judge.

Action by Harry Smith and others against the St. Louis, Iron Mountain & Southern Railway Company. Judgment for plaintiffs. Defendant appeals. Reversed and remanded for new trial.

T. B. McCormick and J. M. Burford, for appellant. R. T. Wilkinson, for appellee Smith.

WILLSON, C. J. Under a contract with the St. Louis Southwestern Railway Company of Texas appellee Smith shipped two car loads, 56 head, of beef cattle from Mt. Vernon to Texarkana, and under a contract with appellant shipped the cattle from Texarkana to the National Stockyards in East St. Louis. As the result of delay in the transportation of the cattle from Texarkana to the National Stockyards, they lost in weight and appearance more than they otherwise would have lost, and said appellee was forced to sell them on a market which had declined between the time they reached their destination and the time they would have reached same but for the delay. Smith claimed the delay was due to negligence on the part of the railroad companies, and sued both of them. He failed to recover anything against the St. Louis Southwestern Railway Company of Texas, but obtained a judgment against appellant for the sum of $182.24 as the damages he had sustained.

The contract between appellant and Smith was reduced to writing. On behalf of the latter and in his name, it was executed by one Turner, who, as Smith's representative, accompanied the cattle. It was entered into at appellant's station in Texarkana, Ark., and appellant's undertaking under it was to be performed wholly outside of this state.

It contained this stipulation: "That as a condition precedent to the recovery of any damages for any loss or injury to live stock covered by this contract, for any cause, including delays, the second party (Smith) will give notice in writing of the claim therefor to some general officer, or to the nearest station agent, of the first party · (appellant), or to the agent at destination or some general officer of the delivering line before such stock is removed from the point of shipment, or from the place of destination, and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of the stock at destination, to the end that such claim may be fully and fairly investigated, and a failure to fully comply with the provisions of this clause shall be a bar to the recovery of any and all such claims, and to any suit or action brought thereon." In the contract was a recital that the freight rate agreed upon was a less rate than that charged by appellant on such shipments, when. made at its risk, and a further recital as follows:. "That in making this contract the undersigned owner of the stock named herein expressly acknowledges that he has had the option of making this shipment under the tariff rates, either at carrier's risk or upon a limited liability, and that he has selected the rate and the liability named herein, and that he expressly accepts and agrees to all the stipulations and conditions herein named." The witness Hodgen, who represented appellant in the execution of the contract, testified that he tendered to Turner two forms of contract—one containing stipulations limiting appellant's liability as specified in the contract as executed, and the other without such stipulations—that the freight rate under the form omitting such stipulations was 50 per cent. higher than it was under the contract executed, and that Turner, having choice as between the two forms of contract, chose and executed the one based on the lower freight rate containing said stipulations limiting appellant's liability. It was conclusively shown that Smith did not comply with the stipulation requiring him within a time specified therein to give appellant notice in writing of his claim for damages. It was further shown that, under the ·laws of Arkansas, such a stipulation when fairly entered into was valid, if based upon a reduced freight rate or other valuable consideration.

The only testimony in the record which can be said to have contradicted that of the witness Hodgen showing the contract with Turner to have been fairly entered into in consideration of a reduced freight rate was that of Turner as follows: "There was no reduction of freight rate that I know of. * * * I do not remember the agent offering me two contracts to sign. I do not remember anything he said to me about another contract, or that a chance was given

to me to sign another contract other than the one I signed. I do not remember whether I read it or not. I thought it was the usual bill of lading, and I may not have read it, thinking it was in the usual form." With reference to the sufficiency of such testimony as that of the witness Turner to impeach the fairness of such a contract and the consideration for it, the Court of Civil Appeals of the Fifth District in a case with facts very similar to those set out above said: "As has been seen, the contract recites that the rate of freight charged is less than the rate charged for shipments transported at carrier's risk, and that the owner of the stock named therein (appellee) expressly acknowledges that he has had the option of making the shipment under the tariff rates either at carrier's risk or upon a limited liability. Neither the appellee, nor Caldwell, says that he was denied an opportunity to read or acquaint himself with the terms of the contract, or that he was not aware of its terms. Nor do either of them testify that as a matter of fact there was no reduction of the freight rate in consideration of the execution of the 'limited liability' contract, or to any fact or circumstance tending to show that said contract was not fairly entered into. The bare statement that the agent of appellant never gave them a choice of but one kind of contract to sign and only one rate, which they supposed was the regular tariff rate, was insufficient to warrant a finding in the face of the other testimony that, in fact, no reduction of freight was given or that the contract was not fairly made." Railway Co. v. Franklin, 129 S. W. 184. The testimony of Turner in this case did not go farther towards raising an issue as to the fairness of the contract and the existence of a consideration for it than did the testimony in the Franklin Case. On the authority of that case, we conclude, therefore, that the testimony in this one was not sufficient to make an issue for the jury as to the validity of the stipulation in question. As it was undisputed that the notice that stipulation bound Smith to give was not given to appellant. It must be said that the recovery by Smith, in so far as it was for injury to the cattle, was unauthorized, and that to that extent, at least, the judgment is erroneous.

The testimony on behalf of Smith that the cattle when sold at their destination weighed 45,600 pounds and that the market was 15 cents per hundredweight lower the day they reached it than it was the day they would have reached it but for the delay being undisputed, the judgment could be reformed and affirmed for the sum of $68.40, if the excess thereof above that sum were remitted, but for error of the trial court in permitting the witness Gibson over appellant's objection ·to state his opinion as to "what would be a reasonable length of time to be consumed by a through freight.

train under ordinary circumstances in making a run from Mt. Vernon to St. Louis," and his error in refusing to instruct the jury as requested by appellant not to consider the delay necessary to unload and reload the cattle en route for the purpose of feeding, watering, and resting them as required by the federal statute. The testimony was undisputed that the cattle could not be transported from Texarkana to St. Louis within 28 hours. It was necessary, therefore, for appellant, to avoid violating the statute referred to (U. S. Rev. St. §§ 4386, 4388 [U. S. Comp. St. 1901, pp. 2995, 2996]), to unload the cattle en route for the purpose of feeding and watering them and permitting them to rest for at least five hours. It could not be charged with negligence for a delay necessary to avoid a violation of the law, and the jury should have been instructed to that effect. As to the testimony of the witness Gibson referred to, we think it was inadmissible. It was not shown that appellant had undertaken to transport the cattle by means of a "through freight train." Whether it should have done so or not under the circumstances of the case was a question the jury might have considered as entering into a determination of the ultimate question as to whether appellant had been negligent or not. But, whether the transportation of the cattle should have been by a "through freight train" or not, the question as to what would be a reasonable time in which to transport them was not one the witness should have been permitted to give his opinion about. Railway Co. v. Roberts, 101 Tex. 418, 108 S. W. 808. The testimony was uncontroverted that the time usually consumed in transporting such a shipment from Mt. Vernon to Texarkana was four or five hours. Deducting the four or five hours necessary to transport the cattle to Texarkana from the time which the witness thought was a reasonable time, under ordinary circumstances, in which to transport them from Mt. Vernon to St. Louis, and the jury had for consideration as evidence the opinion of the witness as to what was a reasonable time, under such circumstances, in which to transport them from Texarkana to St. Louis. In the absence of testimony as to extraordinary circumstances attending the shipment as was the case, the answer to the question as to what would be a reasonable time under ordinary circumstances in which to transport the cattle from Texarkana to St. Louis would determine whether appellant in consuming the time it did consume in transporting the cattle was guilty of negligence or not. So, in effect, the witness was permitted to give his opinion as to the answer the jury should make to the question as to whether the delay in the shipment was due to negligence on the part of appellant or not. Had this testimony been excluded, and had the jury been instructed as suggested, their finding on the issue as to negligence on the part of appellant might have been different.

A number of assignments in appellant's brief present questions which are not likely to arise on another trial, and therefore those assignments will not be considered.

So far as the judgment is in favor of the St. Louis Southwestern Railway of Texas, it is affirmed. So far as it is in favor of Smith against appellant, it is reversed, and the cause is remanded for a new trial as between them.